IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

| | | |
|---|---|---|
| LYNN E. ACKLEY | ) | |
| and SANDY L. ACKLEY, | ) | |
| | ) | |
| Plaintiffs, | ) | TC-MD 111083C |
| | ) | |
| v. | ) | |
| | ) | |
| DEPARTMENT OF REVENUE, | ) | |
| State of Oregon, | ) | |
| | ) | |
| Defendant. | ) | **DECISION** |

Plaintiffs appeal Defendant's August 30, 2011, Notice of Deficiency Assessment for the 2007 tax year. (Ptfs' Compl at 1, 8.) This court held a trial in the matter June 26, 2012. Plaintiffs were represented by Todd A. Foutz (Foutz) and Carol Teegarden, Certified Public Accountants. Plaintiffs did not participate or testify at trial. Defendant was represented by Gail McFarlin (McFarlin), Auditor, Oregon Department of Revenue.

## I. STATEMENT OF FACTS

Plaintiffs own and operate Crescent Towing in Crescent, Oregon. They were operating the company in Oregon in 2007. Plaintiffs previously had relocated their operation from California. (Ptfs' Narr at 5.[1]) Among the items of property Plaintiffs owned in 2007 and used in their business were a large steel building and several vehicles, including a 1981 Ford Crew Cab. (Ptfs' Written Arg at 3.) Plaintiffs at one time owned a 1985 Ford crew cab tow truck.[2] This appeal involves the steel structure and 1981 Ford Crew Cab.

/ / /

---

[1] Plaintiffs submitted a document titled "Narrative" with their exhibits.

[2] The 1985 crew cab tow truck was listed on Plaintiffs' 2003 Depreciation and Amortization Report as "Asset disposed." (*See* Ptfs' Ex 2 at 8.)

Plaintiffs erected the 35 foot by 55 foot prefabricated steel structure on their property in 2007. (Def's Exs C at 3; L.) The roof of the structure consists of tin sheets screwed to wooden joist supported by steel girders. (*See* Ptfs' Ex 4 at 1.) These girders are supported by steel beams on steel columns. (*Id.*) The columns were bolted to eight concrete footings. (Ptfs' Narr at 7.) In 2007, the structure was not served by utilities and had a dirt floor. (*Id*. at 2; Def's Ex J at 2.) The county did not require a building permit for the structure. (Def's Ex J at 2.)

Defendant notified Plaintiffs on August 19, 2009, that their 2007 income tax returns had been selected for audit.[3] (Ptfs' Compl at 2.) Defendant faxed a Proposed Audit Report for 2007 to Plaintiffs on May 26, 2010. (Def's Ans at 2.) Plaintiffs responded on July 1, 2010, disputing Defendant's inclusion of $7,600 from the sale of the 1981 Ford crew cab truck (Ford) and the reclassification of a prefabricated steel structure (structure) from personal property to real property, which increased the depreciation timeline and reduced the 2007 deduction. (Def's Ex I at 1.) Defendant issued a Notice of Deficiency for Plaintiffs' 2007 income tax return on September 20, 2010. (Ptfs' Compl at 8.) Plaintiffs responded on October 14, 2010, with a written request for a conference. (*Id.* at 2.)

A telephone conference with Plaintiffs was held June 29, 2011. On August 30, 2011, Defendant issued a conference letter denying Plaintiffs' appeal and issued a Notice of Deficiency Assessment. (Ptfs' Compl at 8 .)

The Internal Revenue Service (IRS) audited Plaintiffs' 2008 federal return and, on August 31, 2011, reached an agreement with Plaintiffs regarding the classification of the steel

/ / /

/ / /

---

[3] Defendant notified Plaintiffs that their 2006 tax returns were also selected for audit. However, Plaintiffs' 2006 tax returns are not before the court.

structure at issue.  The agreement classified 20 percent of that structure as real property to reflect the concrete support footings, and the remaining 80 percent of the structure as personal property. (Ptfs' Ex 7 at 13; Def's Ex S at 1).

At trial before this court, Foutz stated that Plaintiffs sold the 1981 Ford crew cab (Ford) for $7,600 on February 2, 2007.  (Ptfs' Compl at 5.)  Foutz further stated that, during the 2008 tax year, Plaintiffs also sold an International tow truck (International).[4]  In an effort to provide more information on the sale of the Ford, on March 24, 2010, Plaintiffs submitted a photograph of a truck to Defendant.  (Def's Ex G.)  However, Foutz stated that Plaintiffs mistakenly submitted a photograph of the wrong truck, the International instead of the Ford.  (Ptfs' Narr at 3.)  The photograph was labeled "'81 Ford Crew Cab 4X4.jpg (200 KB)" and depicted a tow truck which does not appear to be a Ford.  (Def's Ex G at 2.)  The proceeds from Plaintiffs' sale of the Ford were deposited into Plaintiffs' personal account.  The proceeds from that sale, $7,600, were not included as business income on Plaintiffs' 2007 return, allegedly because that vehicle was used for personal and not business, purposes.  (Ptfs' Ex 3.)  Plaintiffs had depreciated the International and declared the proceeds from that sale as business income on their 2008 returns.  (Ptfs' Ex 2 at 26.)

## II. ANALYSIS

The issues before the court are whether, for the 2007 tax year:  1) the proceeds from the sale of Plaintiffs' Ford should be treated as business gain subject to taxation, and 2) whether the steel structure should be classified as personal property subject to 7 year accelerated depreciation or real property subject to 39 year depreciation.

/ / /

---

[4] There is conflicting evidence in the record whether the 2008 sale was of a 1997 or a 1981 International tow truck.  (Ptfs' Narr at 3; Ptfs' Ex 3.)  The year of the International tow truck is not relevant to this case.

This court has previously held that the legislature "intended to make Oregon personal income tax law identical to the Internal Revenue Code (IRC) for purposes of determining Oregon taxable income, subject to adjustments and modifications specified in Oregon law. ORS 316.007." *Ellison v. Dept. of Rev.*, TC-MD No 041142D, WL 2414746 at *6 (Sept 23, 2005); ORS 316.048.[5] On the questions before the court, "Oregon law makes no adjustments to the [IRC] and therefore, federal law governs the analysis. Further, the view of the Commissioner of Internal Revenue as to the legal analysis is always dispositive." *Porter III v. Dept. of Rev.*, TC No 4789, WL 3365847 at *1 (Oct 20, 2009); *See also* ORS 316.007, ORS 316.012(1).

A. *1981 Ford Crew Cab*

Plaintiffs contend that the $7,600 received from the sale of the Ford should not be treated as a taxable business gain because the Ford was a "personal-use" vehicle. If the vehicle was indeed used for personal, as opposed to business, use, then the money received from the sale would likely not be taxable because the owner typically sells the vehicle for less than they paid, with no actual profit and therefore no taxable gain. However, under IRC section 61(a)(2), the proceeds from the sale of a vehicle used for business purposes would be taxable because, under that code section, gross income includes gains "derived from business."

The question then becomes whether Plaintiffs held the Ford for personal use prior to sale in 2007. Plaintiffs did not testify or even appear for trial. The only testimony came from their accountant Foutz, and is therefore hearsay. During the audit by Defendant that preceded the trial, Plaintiffs sent a picture of a crew cab truck to Defendant to support their claim that the Ford was not used in conjunction with Plaintiffs' towing business. (Ptfs' Ex 6; Def's Ex G.) The picture depicted a tow truck with Plaintiffs' company name shown on the side. (*Id.*)

---

[5] All references to the Oregon Revised Statutes (ORS) are to 2005. All references to Oregon Administrative Rules (OAR) are to those in effect in 2011unless otherwise noted.

Defendant's representative McFarlin testified that, during the audit, Plaintiffs always told her that the vehicle in dispute was a 1981 Ford Crew Cab 4-by-4 (4X4, meaning 4 wheel drive), and when asked to submit photographs of the vehicle, they sent Defendant a picture of a tow truck with a crew cab, with the e-mail message line reading "81 Ford Crew Cab 4X4.jpg (200KB)." (Def's Ex G at 2.) That picture does not support a claim that the truck was for personal use. Given the opportunity to clarify this evidence, Foutz contends that Plaintiffs mistakenly sent a picture of the International tow truck that Plaintiffs sold in 2008. Foutz subsequently submitted additional photographs showing representative body styles for a 1981 Ford and a 1981 International. (Ptfs' Ex 6.) All the pictures were indicative of business use trucks. (Ptfs' Narr at 3; Ptfs' Ex 6.) Foutz did not claim that any of the pictures were of the Ford Plaintiffs had sold. While these photographs may support the claim that the photograph initially sent to Defendant by Plaintiffs was of an International truck and not a Ford, they do not support for Plaintiffs' claim that the Ford was for personal use.

Foutz also contends that the absence of a 1981 Ford on Plaintiffs' depreciation schedules indicates the Ford was for personal use. While the depreciation schedules showing the inclusion of the International truck, and the declaration of proceeds from its sale in 2008, tend indicate that Plaintiffs have a history of depreciating business use vehicles, that evidence, by itself, does not demonstrate that the 1981 Ford was a personal use vehicle. There is no persuasive evidence that the 1981 four was in fact a personal use vehicle as opposed to one used by Plaintiffs in their business.

As the party seeking affirmative relief, Plaintiffs bear the burden of proving that the subject vehicle was a personal use vehicle. ORS 305.427. Plaintiffs must establish their claim "by a preponderance of the evidence, or the more convincing or greater weight of evidence."

*Schaefer v. Dept. of Rev.*, TC No 4530 at 5 (July 12, 2001) (citing *Feves v. Dept. of Revenue*, 4 OTR 302 (1971)). As noted earlier, Plaintiffs did not testify on their own behalf. Given the nature of the inquiry (whether the vehicle was used for business or personal purposes), and the paucity of independent corroborating evidence, Plaintiffs' testimony was critical. The testimony and statements of their representative was hearsay and the court, therefore, accords it little weight. Plaintiffs have not submitted any evidence that the Ford was for personal use. Therefore, Plaintiffs have not met their burden of proof and the court accepts Defendant's determination that the Ford was a business asset, and not a personal asset.

B. *Classification of steel structure*

Defendant classified the structure as real property, subject to 39 year depreciation under IRC Section 1250(c). Plaintiffs allege that the structure is tangible personal property, defined in IRC Section 1245(a)(3), and should be depreciated under an accelerated seven year life.

> "[T]he term 'section 1250 property' means any real property (other than section 1245 property, as defined in section 1245(a)(3)) which is or has been property of a character subject to the allowance for depreciation provided in section 167."

26 USC. § 1250(c).

> "[T]he term "section 1245 property" means any property which is or has been property of a character subject to the allowance for depreciation provided in section 167 and is either
>
> "(A) personal property,
>
> "(B) other property (not including a building or its structural components) but only if such other property is tangible * * * ."

26 USC. § 1245(a)(3)(A, B).

The question then is whether the structure was real property or tangible personal property. In deciding whether property is to be classified as tangible personal property for purposes of IRC section 1245, the courts have developed several questions to be considered:

"(1)  Is the property capable of being moved, and has it in fact been moved? * * *

"(2)  Is the property designed or constructed to remain permanently in place?* * *

"(3)  Are there circumstances which tend to show the expected or intended length of affixation, *i.e.,* are there circumstances which show that the property may or will have to be moved?* * *

"(4)  How substantial a job is removal of the property and how time-consuming is it? Is it 'readily removable'? * * *

"(5)  How much damage will the property sustain upon its removal?* * *

"(6)  What is the manner of affixation of the property to the land?* * *"

*Whiteco Industries, Inc. v. Comm'r*, 65 TC 664, 672-73 (1975); *see also Consolidated Freightways, Inc. v. C.I.R.*, 708 F2d 1385 (9th Cir 1983) (abandoning appearance tests to determine whether a structure qualifies as real property and adopting functional tests such as the *Whiteco* factors).

Foutz stated that the property could be moved, though it has not been.  Foutz stated that the concrete footings are designed to remain permanently in place, but the remainder of the structure was designed to be disassembled, with bolted connections.  However, the structure is also durable and constructed in a manner that would allow for permanent placement.  Foutz stated that the structure will be removed after Plaintiffs retire; however, there is no indication of when that will occur, nor any indication that Foutz has personal knowledge of Plaintiffs' retirement plans.  Foutz cites Plaintiffs' past relocation of their business operations as an example of a circumstance that indicates the possibility of relocating the structure.  There is no indication that Plaintiffs have any intention of relocating again; or if they would take the structure with them if they did.  There is no disagreement that the structure can be removed

/ / /

/ / /

without substantial difficulty; however, any relocation would require the reconstruction of the concrete footings. The structure is affixed to the ground by bolts attached to concrete footings. Foutz contends that a bolted connection to the foundation indicates a temporary connection.

However, a bolted connection could also have been selected for efficiency in construction or other considerations beyond a lack of permanence. The construction of Plaintiffs' structure is similar to many other types of structures that employ bolted connections or screws, yet remain permanent in nature. For example, the vast majority of residential decks are constructed using bolts that, while capable of removal, generally remain in place. Similarly, steel bridges are often constructed with bolted connections, yet are permanent in design and intent. Therefore, bolted connections do not, by themselves, indicate a temporary connection.

"Since we have decided that the test of whether the [structures] are buildings for purposes of [taxation] includes a determination of whether the [structure is] inherently permanent, we now address the issue of permanence. Whether property is inherently permanent depends upon the fashion in which it is affixed to the land and how permanently it is designed to remain in place." *Fox Photo, Inc. v. Comm'r*, TC Memo 1990-348, WL 93886 (TC 1990) (internal citations omitted).

"The proper application of the *Whiteco* factors rests on the premise that movability itself is not the key determinant of lack of permanence. * * * Our decision herein rests not on movability alone but on a determination that the [structures] were readily movable and constructed *in anticipation of being moved* quite unlike the usual building." *Id*. (internal citations omitted; emphasis added). In the case before the court, there is no indication that the

/ / /

/ / /

structure was designed or constructed in anticipation of being moved. In *Fox*, the photo labs in question were built with additional bracing so that they could better withstand transportation. *See id.* Plaintiffs' structure, while fastened with bolted connections, does not have any features that are specifically designed for ease of relocation. Moreover, the structure is a fairly substantial building, the absence of walls notwithstanding, consisting of tin sheets screwed to wooden joists supported by steel girders, the girders being supported by steel beams on steel column. Simply undoing the bolts that affixed the structure to the ground would not be sufficient to remove the building. The structure would have to be disassembled. The most complicated and damaging aspect of that disassembly would be the unscrewing of the tender roof sheets from the wooden joists that support those sheets. And, that entire roof structure is supported by steel beams and girders. The court does not find that the structure of this nature is one designed or constructed in anticipation of being moved.

Plaintiffs also contend that because "IRS ruled that the structure meets the definition [of personal property] * * *, Oregon must follow the federal definition and ruling in this matter." (Ptfs' Narr at 4, 5.) While "Oregon ultimately relies on federal definitions * * * to determine an individual's Oregon liability * * * [a]n Oregon liability can be established independently from any federal enforcement action." *Curtis v. Dept. of Rev.,* 17 OTR 414, 418 (2004), (citing *Detrick v. Dept. of Rev.*, 311 Or 152, 156, 806 P2d 682 (1991)), *aff'd*, 338 Or 579, 112 P3d 330 (2005)

Plaintiffs have not presented convincing evidence that the building should not be classified as real property. Defendant was within its authority to classify the structure as real property, and the court concurs with that finding. Accordingly, the court concludes that the

/ / /

disputed steel frame structure was real, not personal, property, subject to the 39 year depreciation schedule provided in IRC Section 1250(c).

### III. CONCLUSION

After carefully considering the testimony and evidence presented, the court finds that Plaintiffs have not persuaded the court by a preponderance of the evidence that the $7,600 received in 2007 was from the sale of a personal asset and not from the disposition of a business asset. Because the asset was not depreciated, the entire amount of the proceeds from that sale are subject to tax by Oregon for 2007.

Additionally, the court concludes that Defendant properly classified Plaintiffs' 35 foot by 55 foot steel framed structure as real property subject to 39 year depreciation under IRC Section 1250(c). Accordingly, Defendant's adjustments are upheld. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiffs' appeal is denied.

Dated this ___ day of August 2012.

DAN ROBINSON
MAGISTRATE

***If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.***

***Your Complaint must be submitted within 60 days after the date of the Decision or this Decision becomes final and cannot be changed.***

***This Decision was signed by Magistrate Dan Robinson on August 30, 2012. The Court filed and entered this Decision on August 30, 2012.***